# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1056 | **DATE** | 6/5/2003 |
| **CASE TITLE** | Stalling vs. Union Pacific RR | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached report and recommendation, Plaintiff's Motion for Leave to File a Second Amended Complaint should be granted, Plaintiff's Motion to Overrule Objections and Compel Answers to Plaintiff's Discovery Requests is granted in part, denied in part and reserved in part, and Plaintiff's Motion to Compel Defendant, Union Pacific Railroad Company, to Produce Documents is granted in part and reserved in part. Counsel for both sides are directed to appear for a status hearing on June 18, 2003 at 9:00 a.m. Amtrack is to submit documents to chambers for an *in camera* review by June 25, 2003. Union Pacific is directed to submit its Claims Operations Resources Manual to chambers by June 25, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 3 | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | **JUN 0 6 2003** | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | docketing deputy initials | 63 |
| | Mail AO 450 form. | | | 6/5/2003 | |
| ✓ | Copy to judge/magistrate judge. | | | date mailed notice | |
| cav | courtroom deputy's initials | | | cav | |
| | | | | mailing deputy initials | |

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY STALLING, Special<br>Administrator of the Estates of<br>BECKY STALLING AND RYAN<br>STALLING | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 01 C 1056<br>Magistrate Judge Nan R. Nolan |
| UNION PACIFIC RAILROAD<br>COMPANY, a Corporation, and<br>NATIONAL RAILROAD PASSENGER<br>CORPORATION d/b/a AMTRAK | ) ) ) ) ) | |
| Defendants. | ) | |

DOCKETED
JUN 0 6 2003

To:     The Honorable Paul E. Plunkett
        United States District Court Judge

## REPORT AND RECOMMENDATION

Nan R. Nolan, United States Magistrate Judge

This lawsuit arises out of a train-auto collision in Dwight, Illinois on January 14, 2001. This case is now before the Court on: 1) Plaintiff's Motion for Leave to File a Second Amended Complaint at Law; 2) Plaintiff's Motion to Overrule Objections and Compel Answers to Plaintiff's Discovery Requests; and 3) Plaintiff's Motion to Compel Defendant, Union Pacific Railroad Company, to Produce Documents. For the following reasons, Plaintiff's Motion for Leave to File a Second Amended Complaint should be GRANTED, Plaintiff's Motion to Overrule Objections and Compel Answers to Plaintiff's Discovery Requests is GRANTED IN PART, DENIED IN PART, and RESERVED IN PART, and Plaintiff's Motion to Compel Defendant, Union Pacific Railroad Company, to Produce Documents is GRANTED IN PART and RESERVED IN PART.



## BACKGROUND

On January 14, 2001, an Amtrak train collided with a vehicle driven by Becky Stalling. Becky Stalling and Ryan Stalling, a passenger in her mother's car, sustained injuries in the crash that resulted in their deaths. Plaintiff Gregory Stalling ("Stalling") alleges common law negligence against Defendants Union Pacific and Amtrak for the wrongful death of his wife and daughter. Stalling states that his allegations of negligence are based on Defendants' failure to provide adequate warning devices at the Livingston Road crossing where the collision occurred. At the time of the accident, the Livingston Road crossing was equipped with a crossbuck sign on either side of the crossing and an advance warning sign 500 feet east of the crossing. The crossing was not equipped with automatic gates or flashing light signals.

## DISCUSSION

### A.     Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that, after a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The court need not allow leave to amend when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile. Foman v. Davis, 371 U.S. 178, 182 (1962).

Stalling seeks leave to file a second amended complaint against Defendants "refining" the allegations of negligence against Defendants and adding a state law claim for wilful and wanton conduct against the track owner, Union Pacific Railroad Company. Defendants oppose Stalling's request to file a second amended complaint on essentially two grounds: (1) a state law claim of

wilful and wanton conduct is preempted by federal law and thus allowing the amendment would be futile and (2) Stalling unduly delayed in raising these claims and allowing the wilful and wanton claim would impose additional discovery costs.[1] The Court will address each argument in turn.

### 1. **Preemption Analysis**

The Federal Railroad Safety Act of 1970 ("FSRA") was enacted "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The FSRA gives the Secretary of Transportation authority to "prescribe regulations and issue orders for every area of railroad safety. . . ." 49 U.S.C. § 20103(a). The FSRA contains an express pre-emption provision:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement.

49 U.S.C. § 20106. To pre-empt state law, the federal regulation must "cover" the same subject matter and not merely "'touch upon' or 'relate to' that subject matter." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993). "[P]re-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." Id. The Seventh Circuit has noted that "[t]here is a presumption against finding federal preemption of state law." Thiele v. Norfolk & Western Railway Company, 68 F.3d 179, 181 (7th Cir. 1995).

---

[1] Union Pacific also argues that Stalling should not be allowed to pursue a wilful and wanton theory because it serves no legitimate purpose under Illinois law. Union Pacific speculates that Stalling seeks to add a wilful and wanton claim to obtain punitive damages, to bar evidence of the decedent's own contributory negligence, or to inflame the jury. Absent a more specific showing of a dilatory or improper basis for seeking leave to amend, none of these reasons offered by Union Pacific provide adequate justification for denying Stalling's request.

Union Pacific argues that regulations included in 23 C.F.R. pt. 924 and Part VIII of the Manual on Uniform Traffic Control Devices for Streets and Highways ("MUTCD") preempt Stalling's proposed claim for failing to evaluate grade crossings. The purpose of the regulations set forth in 23 C.F.R. pt. 924 is "to set forth policy for the development and implementation of a comprehensive highway safety improvement program in each State." 23 C.F.R. § 924.1. The regulations require the States to "develop and implement, on a continuing basis, a highway safety improvement program which has the overall objective of reducing the number and severity of accidents and decreasing the potential for accidents on all highways." 23 C.F.R. § 924.5. The program consists of planning, implementation, evaluation, and reporting components. 23 C.F.R. §§ 924.7, 924.9, 924.11, 924.13, and 924.15.

In Easterwood, the Supreme Court considered whether the regulations contained in 23 C.F.R. pt. 924 and Part VIII of the MUTCD preempted a state law claim for failing to maintain adequate warning devices at a Georgia crossing. The Easterwood court held that the provisions of 23 C.F.R. pt. 924 do not pre-empt state tort law concerning whether the railroad was negligent in failing to maintain adequate warning devices at a grade crossing. The Court noted that the provisions of 23 C.F.R. part 924 merely establish the "general terms of the bargain between the Federal and State Governments: The states may obtain federal funds if they take certain steps to ensure that the funds are efficiently spent." Id. at 667. The Court further noted that these regulations simply "encourage the States to rationalize their decisionmaking" and the regulations say little about the subject matter of negligence law because the responsibilities of railroads and the States with respect to grade crossing safety has traditionally been quite distinct. Id.

Moreover, the Easterwood court observed that a state's negligence scheme could easily complement these federal regulations by encouraging railroads to provide current and complete information to the state agency responsible for determining priorities for railroad improvement projects in accordance with § 924.9. Thus, the Court held that "[i]n light of the relatively stringent standard set by the language of § 434 and the presumption against pre-emption, and given that the regulations provide no affirmative indication of their effect on negligence law, [it] was not prepared to find pre-emption solely on the strength of the general mandates of 23 C.F.R. pt. 924." Id. at 924. Similarly, the Easterwood court held that the requirement that the States comply with the MUTCD does not cover the subject matter of state tort law of grade crossings because the Manual disavowed any claim to cover the subject matter of state tort law. Id. at 669-70.

The Easterwood court reached a different conclusion with respect to 23 C.F.R. §§ 646.214(b)(3) and (4). Sections 646.214(b)(3) and (4) "establish requirements as to the installation of particular warning devices." Easterwood, 507 U.S. at 670. When these regulations are applicable, state tort law is pre-empted. Id. These regulations cover "the subject matter of state law, which . . . seeks to impose an independent duty on a railroad to identify and/or repair dangerous crossings." Id. at 671. These regulations apply "on any project where Federal-aid funds participate in the installation of" warning devices at railroad crossings. 23 C.F.R. § 646.214(b)(3); Thiele, 68 F.3d at 182.

Here, Stalling seeks to add a claim of wilful and wanton conduct based on Union Pacific's alleged policy of failing to independently install adequate warning devices at passive railroad crossings, including the Livingston Road crossing, and its alleged policy of failing to independently evaluate warning devices and identify dangerous crossings. Illinois common law provides that a

"railroad has a duty to provide adequate warning devices at its crossings." Espinoza v. Elgin, Joliet and Eastern Railway Company, 649 N.E.2d 1323, 1329 (Ill.1995). Absent federal financial participation and complete installation of devices, Illinois common law concerning grade crossings is not pre-empted. Meyer v. Southern Pacific Lines, 199 F.R.D. 610, 613 (N.D. Ill. 2001). Because Union Pacific has not claimed that federal funds participated in the installation of the safety devices at the Livingston Road crossing or any other crossing, the Court finds that Stalling's proposed allegations regarding the adequacy of warning devices are not pre-empted.

With respect to evaluating and identifying dangerous crossings, Union Pacific argues that the States, not the railroads, are responsible for surveying each crossing and making a determination of the need for upgrading protection at all rail-highway grade crossings. Union Pacific contends that railroads do not have an independent duty to evaluate the adequacy of the protection at railroad crossings.

Other than the potential sources of pre-emption discussed in Easterwood, Union Pacific does not cite any specific federal law, rule, regulation, or standard which preempts Illinois negligence law regarding identifying dangerous crossings. In Easterwood, the Supreme Court examined the regulations of 23 C.F.R. pt. 924. The Court also noted that parallel regulations, then codified at 23 C.F.R. § 1204.4, Highway Safety Program Guideline No. 12(G), "require state programs to systematically identify hazardous crossings and develop 'a program for the elimination of hazards.'" Easterwood, 570 U.S. at 666 n.6. Effective August 17, 1995, a new Roadway Safety guideline number Guideline No. 21 was created and Guideline No. 12, among others, was eliminated. 60 F.R. 36641-01. Guideline No. 21 provides, in relevant part:

> Every state, in cooperation with county and local governments, should have a program of highway design, construction, and maintenance to improve highway safety. A model program should have the following characteristics . . . A method for systematic identification and tabulation of all rail-highway grade crossings and a plan for the elimination of hazards and dangerous crossings.

60 F.R. at 36665. Guideline No. 21 further provides:

> Each State, in cooperation with its political subdivisions and with each Federal department or agency which controls highways open to public travel or supervises traffic operations, should have a program for applying traffic engineering measures and techniques, including the use of traffic control devices which are in conformance with the Manual on Uniform Traffic Control Devices, to reduce the number and severity of traffic crashes. A model program should have the following characteristics . . . analyze potentially hazardous locations--such as sharp curves, steep grades, and railroad grade crossings--and develop appropriate countermeasures."

60 F.R. at 36666. The Amendments to the Highway Safety Program Guidelines make clear that Guideline No. 21 is merely "advisory" and not "mandatory." 60 F.R. at 36653. Thus, like the regulations of 23 C.F.R. pt. 924 which merely "establish the general terms of the bargain between the federal and state government," the Highway Safety Program Guidelines only provide "information the States could draw upon to build the framework of their highway safety programs." 60 F.R. at 36653. The Amendments to the Highway Safety Program Guidelines do not cover the subject matter of Illinois negligence law.

Moreover, in Easterwood, the Supreme Court observed that while final authority for the installation of particular safety devices at grade crossings may rest with state and local governments in Georgia, this allocation of responsibility did not relieve the railroads of their duty to take all reasonable precautions to maintain grade crossing safety, "including, for example, identifying and bringing to the attention of the relevant authorities dangers posed by particular crossings." Easterwood, 507 U.S. at 665 n.5. Similarly, while Illinois law provides that "no railroad may change

-7-

or modify the warning device system at a railroad-highway grade crossing . . . without having first received the approval of the [Illinois Commerce] Commission (625 ILCS 5/18c-7401)," Union Pacific has failed to cite to any authority providing that a railroad's common law duty does not include a duty to identify dangerous crossings and bring them to the attention of the proper governmental authorities. In fact, Illinois law expressly recognizes that the Illinois Commerce Commission may receive and act upon "complaint[s]" regarding the adequacy of warning devices "in order to promote and safeguard the health and safety of the public." 625 ILCS 5/18c-7401.

Thus, the Court concludes that a railroad's duty to identify dangerous crossings is not preempted by federal law absent federal financial participation and completed installation of warning devices. Stalling may be able to show that absent federal financial participation in the installation of warning devices, Union Pacific had a policy of failing to identify dangerous crossings and failing to provide adequate warning devices. Because Union Pacific has not shown that such a claim is futile, the Court rejects is federal preemption argument as a basis for denying the motion for leave to amend.

### 2.    Undue Delay and Prejudice

Union Pacific also asserts that Stalling's request to amend his complaint to add a claim of wilful and wanton conduct should be denied because he has not given a sufficient explanation for his delay in seeking to add the new claim and Union Pacific will be significantly prejudiced if leave to amend is allowed.

Delay alone is not reason enough to deny a motion to amend. Tamari v. Bache & Co., 838 F.2d 904, 909 (7th Cir. 1988). However, the greater the delay, "the greater the presumption against granting leave to amend." Id. Stalling's delay was not so extreme as to warrant a presumption that

Union Pacific will be prejudiced. The motion for leave to amend was brought before discovery closed. Furthermore, Stalling has explained that only through ongoing discovery and investigation was he able to determine the viability of his wilful and wanton claim.

Union Pacific has failed to identify any real prejudice that would result from allowing the addition of Stalling's wilful and wanton claim. Discovery is still ongoing in the instant case. Compare Clay v. City of Chicago Department of Health, 143 F.3d 1092, 1094 (7th Cir. 1998) (affirming denial of leave to amend to add new theory of liability after discovery had closed). Furthermore, a dispositive motion filing date and a trial date have not been set. The Court is mindful of Union Pacific's concern that the addition of a wilful and wanton count may lead to new discovery. While the addition of the wilful and wanton count will likely increase some of the needed discovery and may add some time for the final disposition of the case, the burden and expense on Union Pacific is not so great as to constitute undue prejudice.

### 3.    Proposed Negligence Allegations

Stalling seeks to plead additional negligence allegations against Amtrak concerning its failure to provide adequate warning devices at the Livingston crossing. Amtrak maintains that it has no legal duty to provide additional warnings on property it does not own. According to Amtrak, its obligation at a railroad crossing is limited to providing warning of the approaching train through use of the train's headlight and ditchlights and the use of the train's horn.

In Meyer, 199 F.R.D. at 615, Amtrak unsuccessfully argued that it did not have a duty to provide adequate warning devices at a rail crossing where it lacked a property interest. As in Meyer, Amtrak has failed to provide any legal authority supporting its contention that ownership of property is determinative of who has a duty to provide adequate warning devices. Id. Moreover, the plaintiff

in Meyer presented an affidavit from the Chief Counsel at the Illinois Commerce Commission stating that any railroad operating in the State of Illinois is permitted to fund the installation of warning devices at railroad crossings over which they operate trains, regardless of ownership of property. Id. Thus, the Meyer court considered and rejected the same argument advanced by Amtrak in this case. Given the Meyer opinion and the lack of authority offered by Amtrak, this Court similarly rejects Amtrak's argument as a basis for denying Stalling leave to plead additional negligence allegations against Amtrak.

**B.    Motions to Compel**

Rule 26(b)(1) prescribes the scope of matters upon which a party may seek discovery. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The Federal Rules of Civil Procedure contemplate liberal discovery, and "relevancy" under Rule 26 is extremely broad. Saket v. American Airlines, Inc., 2003 WL 685385, *2 (N.D. Ill. Feb. 28, 2003). Trial courts have broad discretion over discovery matters. Rennie v. Dalton, 3 F.3d 1100, 1110 (7th Cir. 1993).

**1.    Document Production Requests**

Stalling seeks the production of documents falling into several categories. The categories of documents are: 1) discovery beyond the Livingston Road crossing; 2) High Speed Rail Project documents; 3) Amtrak's Claims Manual; 4) Amtrak's Unusual Occurrence Report; and 5) improvements after the accident in question. Stalling also seeks production of the following documents from Union Pacific: 1) claims manuals for the last 10 years; 2) grade crossing resource manuals for the last 10 years; and 3) documents regarding the near miss/hit program and near

-10-

miss/hit reports for the Joliet subdivision corridor, including the Livingston Road crossing, for the 10 years prior to January 14, 2001. Defendants claim that Stalling's discovery requests that address lobbying efforts by Defendants regarding the common law duties of railroads to provide safe crossings are precluded by the Noerr-Pennington doctrine. The Court will address each category of documents sought by Stalling, but first addresses Defendants' Noerr-Pennington argument.[2]

    a.    **Noerr-Pennington Doctrine**

Defendants argue that Stalling's discovery requests that address lobbying efforts by Defendants regarding the common law duties of railroads to provide safe crossings are precluded by the Noerr-Pennington doctrine. The Court disagrees with this contention. The Noerr-Pennington doctrine derives from the holdings of two cases. Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961); United Mine Workers v. Pennington, 381 U.S. 657 (1965). In Noerr, the Court held that "the Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." Noerr, 365 U.S. at 136. In Pennington, the Court confirmed that "Noerr shields from the Sherman Act a concerted effort to

---

    [2] Defendants further argued that the joint defense privilege protected from disclosure information concerning the possible activities of Defendants in lobbying for more favorable laws and regulations. The joint defense privilege or common interest rule extends an existing attorney-client privilege to protect the confidentiality of communications passing from one party to the attorney of another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel. United States v. Evans, 113 F.3d 1457, 1467 (7th Cir. 1997). At oral argument, defense counsel clarified that she does not maintain that all documents concerning Defendants' lobbying efforts are privileged. For example, Stalling is entitled to discover any document that is in the public domain regarding Defendants' lobbying efforts. At the time of oral argument, Stalling's counsel had not had an opportunity to analyze Defendants' privilege log. Stalling was given until February 13, 2003 to provide the Court with a pleading describing any remaining disputed privilege issue. Because Stalling did not file any such pleading, the Court assumes all privilege issues have been resolved between the parties.

influence public officials regardless of intent or purpose." Pennington, 381 U.S. at 670. Thus, the Noerr-Pennington doctrine provides that "parties may petition the government for official action favorable to their interests without fear of suit, even if the result of the petition, if granted, might harm the interests of others." Tarpley v. Keistler, 188 F.3d 788, 794 (1999).

The Noerr-Pennington doctrine does not address the discoverability of Defendants' lobbying efforts. "The mere fact that the documents sought by [Stalling] relate to or arise from lobbying activity is insufficient to bar their discovery." In re Brand Name Prescription Drugs Antitrust Litigation, 1995 WL 509666, *2 (N.D. Ill. Aug. 18, 1995). Stalling does not seek to impose liability based on Defendants' lobbying efforts. Rather, discovery of information concerning Defendants' lobbying activities is sought for the limited purpose of undermining Defendants' argument that the railroads have no common law duty to provide adequate warning devices. Stalling believes that discovery regarding Defendants' lobbying activities will establish that Defendants knew they had a common law duty which they lobbied to change.

Accordingly, Defendants' Noerr-Pennington objection is overruled with respect to Requests for Admissions Nos. 13, 14, and 17 directed to Amtrak, Request for Admission No. 15 directed to the Union Pacific, and Interrogatory No. 20 directed to Amtrak.[3] The Court emphasizes that this ruling relates solely to the discoverability of lobbying efforts. The Court's discovery determination should not be construed as a ruling on the potential admissibility of such evidence at trial.

---

[3] Amtrak also objects to Interrogatory No. 20 on the grounds that it is overly broad in time and scope. The Court will consider the specifics of these objections at the June 18, 2003 status hearing.

### b.     Discovery Beyond the Livingston Road Crossing

A number of Stalling's requests seek nation-wide discovery (Union Pacific Request No. 6 and Amtrak Request Nos. 27 and 28) and discovery of information concerning the railroad line between St. Louis and Chicago (Union Pacific Request to Produce Nos. 2, 5, and 8 and Amtrak Request to Produce Nos. 16 ,17, 32, and 33). Defendants object on relevancy grounds to providing discovery regarding crossings other than the Livingston Road crossing. Defendants contend that relevancy in this case is limited to what happened at this crossing on this particular day.

Evidence of substantially similar prior accidents is relevant to determining notice of a dangerous condition and disregard for the dangerous condition. Evidence of prior accidents at the same crossing may establish such notice. Kelsay v. Consolidated Rail Corp., 749 F.2d 437, 442- 446 (7th Cir. 1984); Gardner v. Southern Railway System, 675 F.2d 949, 952 (7th Cir. 1982) (stating "[e]vidence of prior accidents which occurred at the same crossing under similar conditions may be admitted to show that the railroad had prior knowledge that a dangerous and hazardous condition existed."); Churchill v. Norfolk & Western Railway Co., 383 N.E.2d 929, 935-36 (Ill. 1978); Moore v. Bloomington, D. & C. R. Co., 128 N.E.2d 721, 722-23 (Ill. 1920). However, evidence of accidents occurring under substantially similar conditions at different locations may also be relevant to show that a defendant had notice of a dangerous condition at the accident crossing. See Newton v. Meissner, 394 N.E.2d 1241, 1251 (Ill. App. 1979); First National Bank v. Illinois Central Gulf R.R. Co., 378 N.E.2d 1329, 1335-36 (Ill. App. 1978).

Although it might be more difficult for Stalling to establish the necessary degree of similarity for purposes of admissibility with respect to other crossings, this does not provide a valid basis for precluding discovery of the information. Id. at 1336 (stating "since the accidents occurred at

different crossings, it is doubtful whether a sufficient foundation could have been laid by plaintiffs to demonstrate that the accidents were similar in nature."). Moreover, whether Defendants had a policy and practice of failing to inspect warning devices and failing to provide adequate warning devices at other crossings may be relevant to the wilfulness of Defendants' conduct.

This does not mean, however, that Stalling is entitled to all of the discovery he seeks regarding crossings at other locations. A court can limit discovery if it determines, among other things, that the discovery is unreasonably cumulative or duplicative, obtainable from another source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2).

After weighing the likely burden or expense of the proposed discovery and its likely benefit, the Court issues the following rulings. Union Pacific shall respond to Request to Produce Nos. 2, 5, and 8.[4] Request to Produce No. 5 directed to Union Pacific is, however, limited to the Joliet Subdivision from January 14, 1996 to the present. Amtrak shall respond to Request to Produce Nos. 16, 17, 27, 28, 32, and 33 with the following limitations. At oral argument, Stalling agreed to limit Request to Produce No. 16 directed to Amtrak to 20 miles in either direction of the grade crossing at Livingston Road. Request to Produce No. 32 is limited to the Joliet Subdivision for the time period from January 14, 1996 to the present. Request to Produce No. 33 is limited to the time period from January 14, 1996 to the present. At oral argument, Stalling agreed to limit Request to Produce No. 27 directed to Amtrak to 20 miles in either direction of the grade crossing at Livingston Road. The Court further limits Request to Produce No. 27 to the time period January 14, 1996 to the present. Request to Produce No. 28 directed to Amtrak is limited to lawsuits due to railroad crossing

---

[4] At oral argument, Stalling withdrew Request to Produce No. 6 directed to Union Pacific.

collisions occurring within the Joliet Subdivision and the time period January 14, 1996 to the present.

### c. **High Speed Rail Project**

Plaintiff requests any and all Amtrak documents related to the high speed rail project for the stretch of railroad track 20 miles in either direction of the Livingston Road crossing on the UP SPCSL line (Request #34) as well as the complete engineering file from the Union Pacific for this high speed rail project (Request #8).

According to Defendants, the High Speed Rail Project is a project being undertaken by the Illinois Department of Transportation along the entire rail line from Chicago to St. Louis. It is a multi-billion dollar project which was in the initial planning stages at the time of this accident. Defendants state that agreements regarding the proposed upgrades of the crossing along this line were not finalized until June, 2001. Defendants have provided Stalling with these stipulated agreements as well as the survey pertaining to the Livingston Road crossing from this project.

Defendants object to producing further information regarding the high speed rail project on the grounds of relevancy and burdensomeness. Defense counsel states that the engineering file for the high speed rail project and any and all documents regarding it consist of volumes and volumes of material. Moreover, defense counsel maintains that searching beyond the actual engineering file for any and all reports or documents in a national railroad would require searching through the files of multiple departments in multiple locations for documents that might have some reference to the project.

Stalling states that the high-speed rail project documents are relevant to Defendants' inspection of the Livingston Road crossing prior to January 14, 2001 and Defendants' knowledge

-15-

that the Livingston crossing was dangerous. Stalling is entitled to all documents related to the high speed rail project and the Livingston Road crossing, including documents from Union Pacific's engineering file regarding the high speed rail project and the Livingston Road crossing. Defense counsel represented at oral argument that she had produced all such documents for the Livingston Road crossing.

Stalling has not demonstrated that further discovery regarding the high speed rail project and other crossings is relevant to a claim or defense in this matter or likely to lead to the discovery of admissible evidence. At oral argument, Stalling counsel explained that he believed documents regarding the high speed rail project would provide him with information concerning the standards used for determining when gates and lights should be installed at crossings. Defense counsel has explained, however, that every crossing, regardless of its characteristics, is being upgraded with lights and gates as part of the high speed rail project. Thus, Stalling has not shown that evidence regarding the upgrading of other crossings along the high speed rail track may lead to the discovery of admissible evidence concerning notice of a dangerous condition at Livingston Road. Stalling's request for further documents regarding the high speed rail project is denied.

### d.    Amtrak's Claims Manual

Stalling seeks Amtrak's Claims Manual and any other manuals, documents, or memoranda detailing Amtrak's claims investigative process or assessment of grade crossing collision incidents. (Request No. 29). At oral argument, defense counsel stated that no Amtrak Claims Manual exists. The record is unclear regarding whether any other manuals, documents, or memoranda detailing Amtrak's claims investigative process or assessment of grade crossing collision incidents exist. If any other manuals, documents, or memoranda detailing Amtrak's claims investigative process or

assessment of grade crossing collision incidents exist and are being withheld on a claim of work-product privilege, Amtrak shall submit such documents to chambers for an *in camera* review along with the date of the documents, the author, all recipients, as well with their capacities, and a specific explanation of why the documents are privileged or protected from disclosure.  Allendale Mutual Ins. v. Bull Data Systems, Inc., 145 F.R.D. 84, 88 (N.D. Ill. 1992).  Amtrak shall submit its documents by June 25, 2003.

### e.    Amtrak's Unusual Occurrence Report

Stalling requests a copy of Amtrak's "Unusual Occurrence Report" for the accident at issue here.  (Request No. 31).  Amtrak states that the Unusual Occurrence Report is privileged and inadmissible pursuant to 49 U.S.C. § 20903, which provides that, "No part of an accident or incident report filed by a railroad carrier ... may be used in a civil action for damages resulting from a matter mentioned in the report."  Defense counsel identified the report on her privilege log.  Because Stalling failed to file any objections to the privilege log, the Court assumes this issue has been resolved.

### f.    Subsequent Remedial Measures

Stalling seeks from Union Pacific all documents reflecting any improvements or upgrades at the Livingston Road crossing after January 14, 2001.  Union Pacific maintains that documents post-dating the accident are irrelevant to any issue in this lawsuit and would require a search through volumes and volumes of material given the high speed rail project.

Stalling acknowledges that post-remedial measures are not admissible to prove negligence but can be admissible under certain other circumstances.  Federal Rule of Evidence 407, which bars the admissibility of subsequent remedial measures to prove negligence or culpable conduct in

connection with the event, is not a rule governing pretrial discovery. Rule 407 does not preclude Stalling's requested discovery because it may be relevant and admissible under an exception to Rule 407 depending on what Defendants argue at trial. See Weinstein, Evidence § 407.09 at 407-39 (2000) (stating that Rule 407 is "essentially a rule of public policy, rather than of relevancy, and subsequent remedial measures might eventually prove admissible on a consequential, material fact in issue other than negligence."). The trial judge may entertain an appropriate motion in limine regarding the admissibility of any subsequent remedial measures, but any such evidence regarding the Livingston Road crossing is discoverable at this stage of the proceedings.

g.     **Union Pacific Documents**

Stalling also seeks production of the following documents from Union Pacific: 1) claims manuals for the last 10 years; 2) grade crossing resource manuals for the last 10 years; 3) documents regarding the near miss/hit program and near miss/hit reports for the Joliet subdivision corridor, including the Livingston Road crossing, for the 10 years prior to January 14, 2001. Union Pacific raises several objections to the production of these documents.

Union Pacific first objects to producing claims manuals or grade crossing manuals predating September 11, 1996 and post-dating January 14, 2001 on the grounds of relevancy. Union Pacific did not own or maintain this section of track or this crossing prior to September 11, 1996, and the date of the accident at issue here is January 14, 2001. Union Pacific's objection is overruled. When Union Pacific purchased the Chicago to St. Louis railroad line at issue here, it may have inherited documents from the prior owner regarding the adequacy of warning devices at the Livingston Road crossing or substantially similar crossings on this line. Stalling is entitled to discover such information. Moreover, Union Pacific's own crossing safety policies pre-dating September 11, 1996

are relevant and discoverable as they may indicate efforts that Union Pacific took or should have taken to inspect t/his crossing and other crossing with substantially similar conditions. Documents post-dating January 14, 2001 are discoverable because they may show changes in Union Pacific inspection or safety policies regarding grade crossings which may have been feasible prior to January 14, 2001.[5] After weighing the likely burden of this discovery and its likely benefit, the Court limits Stalling's request for claims manuals or grade crossing manuals to the period January 14, 1996 to the present.

Union Pacific next argues that is Claims Operations Resources Manual is protected from disclosure by the work-product doctrine. Neither side has provided the Court with Union Pacific's privilege log and the Court is unable to determine from the pleadings whether the elements of the work product doctrine have been established. Accordingly, it is necessary for the Court to conduct an *in camera* review of the Union Pacific's Claims Operations Resources Manual to determine whether it is protected from disclosure by the privilege asserted. Union Pacific is directed to submit its Claims Operations Resources Manual to chambers by June 25, 2003. Union Pacific shall also identify the date of the Manual, the author, all recipients, along with their capacities, and provide a specific explanation of why the Manual is privileged or protected from disclosure. Allendale, 145 F.R.D. at 88.

Stalling also seeks near miss/hit documents for all crossings in the same subdivision or corridor as the Livingston Road crossing, the Joliet Subdivision, for the 10 years prior to January 14,

---

[5] Defense counsel requested until April 28, 2003 to file an amended response to Stalling's request for any version of the Grade Crossing Resource Manual post-dating September 11, 1996 and pre-dating the date of the accident. Stalling has not filed any objection to Union Pacific's amended response.

2001. Union Pacific states that a near hit or near miss occurs when a motorist ignores the presence of a train and his obligation to yield and attempts to "beat" the train through a crossing. Union Pacific responded that no such reports exist for the Livingston Road crossing and objected to the remainder of Stalling's request concerning other crossings on relevancy grounds. Union Pacific's objection is overruled. As previously discussed, evidence of a near hit at another, substantially similar crossing may be relevant or lead to the discovery of admissible evidence concerning an allegedly dangerous condition at Livingston Road. Union Pacific complains that information concerning other crossings will lead to "mini-trials" on the issue of what is substantially similar. Whether Stalling will be able to establish that Union Pacific's other crossings are similar enough to be relevant and admissible will be decided by the trial judge at a later date and does not impact the discoverability of near hit/miss documents for other crossings. After weighing the likely burden of this discovery and its likely benefit, the Court limits Stalling's request for near miss/hit documents to the period January 14, 1996 to January 14, 2001 for all crossings in the same subdivision or corridor as the Livingston Road crossing, the Joliet Subdivision.

### 2.  <u>Interrogatories Directed to Amtrak</u>

Stalling complains that Amtrak objected to all 33 of his interrogatories and provided "unresponsive and evasive answers." Stalling asks the Court to strike Amtrak's objections and order Amtrak to provide responsive answers. (Stalling's Motion to Compel, p. 12). Amtrak is entitled to make objections to Stalling's discovery requests. While Amtrak raised objections to all of Stalling's interrogatories, the vast majority of interrogatories were answered.

Stalling's motion fails to specifically explain why each objection or answer provided by Amtrak is improper. The Court will not try to guess why Stalling believes Amtrak's objections and

answers are improper. Stalling's request that the Court strike Amtrak's objections and order responsive answers is denied.

### 3. Requests to Admit Directed to Amtrak and Union Pacific

Stalling generally objects to Defendants' objections and responses to his requests to admit. (Stalling's Motion to Compel, pp. 12-13). Defendants properly asserted objections to the requests to admit. Defendants answered most of the requests to admit. Stalling's motion again fails to specifically address the alleged deficiencies in Defendants' objections and responses. Accordingly, Stalling's request that the Court order Defendants to provide responsive answers to his requests to admit is denied.

### 4. Depositions

Stalling's motion also sought to compel depositions of six Union Pacific employees and four Amtrak employees. At oral argument, Stalling withdrew his request to depose the following individuals: 1) Union Pacific Rule 30(b)(6) head of risk management person; 2) Nancy Hill; and 3) an Amtrak Rule 30(b)(6) person most knowledgeable about formulae that served as a basis for determining whether additional warning devices should be installed at railroad crossings. With respect to the remaining depositions, counsel are directed to meet and confer in a sincere attempt to resolve any outstanding deposition issues in light of the Court's rulings regarding the scope of discovery.

### C. William Hartmann's Personnel File

On April 25, 2003, defense counsel submitted the personnel file of William Hartmann, the Amtrak train engineer, to the Court in chambers. Amtrak explained in its cover letter that Stalling requested production of the Hartmann's personnel file and Amtrak believes production of Hartman's

personnel file "would be an invasion of Mr. Hartmann's privacy rights and could very possibly subject Amtrak to penalty for privacy law violations." Counsel apparently agreed among themselves that the Court would conduct an "*in camera* inspection to determine if there is any information contained within his file that would be relevant to plaintiff's claims against Amtrak and therefore discoverable."

The Court declines to conduct an *in camera* review of Mr. Hartmann's personnel file. Absent extraordinary circumstances, the Court does not conduct *in camera* document reviews to determine relevancy for purposes of discovery. Stalling has apparently indicated that he believes information contained within the personnel file regarding other train-auto accidents involving Mr. Hartmann is discoverable. Defense counsel can determine just as easily as the Court whether Mr. Hartmann's file contains responsive information. The Court sees no current need for an *in camera* inspection of Mr. Hartmann's personnel file.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Leave to File a Second Amended Complaint should be GRANTED, Plaintiff's Motion to Overrule Objections and Compel Answers to Plaintiff's Discovery Requests is GRANTED IN PART, DENIED IN PART, and RESERVED IN PART, and Plaintiff's Motion to Compel Defendant, Union Pacific Railroad Company, to Produce Documents is GRANTED IN PART and RESERVED IN PART. Counsel for both sides are directed to appear for a status hearing on June 18, 2003 at 9 a.m. for the purpose of setting deadlines for the production of discovery ordered herein and a firm discovery cutoff date.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. See Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1).

Failure to object constitutes a waiver of the right to appeal. <u>Lorentzen v. Anderson Pest Control</u>, 64 F.3d 327, 330 (7th Cir. 1995).

**E N T E R:**

Nan R. Nolan
**Nan R. Nolan**
**United States Magistrate Judge**

Dated: June 5, 2003