Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1056 | **DATE** | 7/16/2003 |
| **CASE TITLE** | Gregory Stalling vs. Union Pacific RR. Co., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: all of the parties' objections to Magistrate Judge Nolan's June 5, 2003 discovery Order are overruled. The Court also adopts in its entirety the Magistrate Judge's recommendation that plaintiff be permitted to amend his complaint to assert a wilful and wanton claim against UP and add negligence allegations against Amtrak. Plaintiff has fourteen days from the date of this Order to amend his complaint. Defendants have fourteen days from the date of this Order to comply with their discovery obligations as set forth above. Ruling date of 8/13/03 is stricken. Status hearing set for 8/27/03 at 10:30a.m.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 17 2003 | |
| | Notified counsel by telephone. | | date docketed | 71 |
| ✓ | Docketing to mail notices. | | IS | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 03 JUL 16 PM 4:14 | date mailed notice | |
| | TBK courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREGORY STALLING, Special )
Administrator of the Estates of BECKY )
R. STALLING and RYAN NICHOLE )
STALLING, )
 )
        Plaintiff, )
 )
v. ) No. 01 C 1056
 ) Paul E. Plunkett, Senior Judge
UNION PACIFIC RAILROAD COMPANY )
and NATIONAL RAILROAD PASSENGER )
CORPORATION d/b/a AMTRAK )
 )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

On June 5, 2003, Magistrate Judge Nolan issued a report and recommendation ("R&R") on plaintiff's request to file a second amended complaint and an order resolving the parties' discovery disputes ("Order"). The parties filed timely objections to both the R&R and the Order. For the reasons set forth below, all of the parties' objections to the Order are overruled and the Court adopts in its entirety Magistrate Judge Nolan's recommendation that plaintiff be allowed to file an amended complaint.

71

**Discovery Order**

We may modify Magistrate Judge Nolan's discovery order only if it is "clearly erroneous or contrary to law." FED. R. CIV. P. 72(a). Plaintiff contends that it is because it: (1) may result in restricted discovery of Amtrak's claims manuals or Union Pacific's Claims Operations Resource Manual; (2) improperly restricts discovery of corridor studies; (3) improperly restricts discovery concerning the high-speed rail project; and (4) incorrectly states that defendants have produced all high-speed rail project documents regarding the Livingston Road crossing.

Plaintiff's first objection is easily dispatched. Among other things, plaintiff requested production of Union Pacific's Claims Operations Resource Manual and Amtrak's claims manuals.[1] Because those documents may be protected by the work product privilege, Magistrate Judge Nolan deferred ruling on this aspect of plaintiff's motion pending an *in camera* review. (Order at 16-17, 19.) Until the Magistrate Judge makes a decision on this issue, plaintiff's objection is premature.

Plaintiff also says Magistrate Judge Nolan's refusal to order "[d]efendants . . . to produce the Corridor Studies for the rail corridor that includes the Livingston Road crossing" was erroneous. (Pl.'s Objections at 4.) Presumably, this objection relates to document production request eight directed to UP and document production request thirty-two directed to Amtrak, which seek, respectively: "[a]ny and all Corridor Studies for the Joliet Subdivision of the UP SPCSL railroad line" and "[a]ll Corridor Studies . . . for the UP SPCSL line that includes the Brewster Road crossing in Dwight, Illinois." (See Pl.'s Mot. Overrule Objections & Compel Answers, Ex. A, UP's Resp. Pl.'s Supplemental Req. Produc. ¶ 8; id., Ex. B, Amtrak's Resp. Pl.'s Req. Produc. ¶ 32.) The

---

[1] Plaintiff also requested UP's claims manuals for the last ten years. The Magistrate Judge ordered UP to produce its manuals for the last seven years, (see Order at 18-19), a time limitation that is not clearly erroneous.

2

Magistrate Judge ordered UP to comply with request eight and ordered Amtrak to produce all documents responsive to request thirty-two that concern the Joliet Subdivision and were generated in the last seven years. (Order at 14.) Because the Magistrate Judge ordered UP to comply with plaintiff's request and placed reasonable limitations on his request to Amtrak, plaintiff's objection to that portion of the Order is overruled.

Plaintiff's last two objections concern discovery into the high-speed rail project. First, plaintiff says that discovery into that project should not be limited to information relating to the Livingston Road crossing. Moreover, he says, even if that limitation is appropriate, defendants have not complied with their discovery obligations, as the Order suggests.

Magistrate Judge Nolan limited discovery into the high-speed rail project because plaintiff had not articulated the relevance of documents pertaining to other portions of the rail line. (Id. at 16.) Plaintiff argues that documents relating to the entire project are indeed relevant because information pertaining to the Livingston Road crossing is likely contained in studies and evaluations defendants conducted of the entire line. (See Pl.'s Objections at 2-3.) Any such documents, however, would fall into the category of "documents related to the high speed rail project and the Livingston Road crossing," documents that the Magistrate Judge ordered defendants to produce. (See Order at 15-16.) Because plaintiff has offered no other reason for seeking these documents, his objection to the limitation on high-speed rail discovery is overruled.

Finally, plaintiff says the Magistrate Judge erred by stating that defendants had produced all high-speed rail documents relating to the Livingston Road crossing as no such documents have been produced. That portion of the Order was based on defense counsel's representation that production was complete. (See id. at 16.) To the extent there was a miscommunication and defendants have

3

not yet produced those documents, they are ordered to do so within fourteen days of the date of this order.

Defendants also believe Magistrate Judge Nolan's Order is erroneous, but for different reasons. They say that: (1) information related to their lobbying activities is protected from disclosure by the Noerr-Pennington doctrine and by the joint-defense and attorney-client privileges; and (2) information pertaining to accidents that occurred at grade crossings other than the Livingston Road crossing are irrelevant. The Court disagrees with both contentions.

The Noerr-Pennington doctrine, which stems from Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) and United Mine Workers v. Pennington, 381 U.S. 657 (1965), protects those who "petition the government for action favorable to their interests" from antitrust or other civil liability for those efforts. Tarpley v. Keistler, 188 F.3d 788, 794 (7th Cir. 1999). That does not, however, mean that all lobbying information is off limits in civil litigation. On the contrary, "[e]vidence of activity that is protected by the Noerr doctrine may be admitted to show the purpose and character of other activities if doing so is not overly prejudicial to the defendants." MCI Communications Corp. v. American Tel. & Tel. Co., 708 F.2d 1081, 1160 (7th Cir. 1982) (internal quotation marks and citation omitted).

Magistrate Judge Nolan correctly determined that defendants' lobbying information is discoverable. Plaintiff does not seek to impose liability on defendants *because* they lobbied to change their common law duties to provide warning devices at crossings. Rather, he seeks the lobbying information to demonstrate defendants' awareness of that duty. (Order at 12.) That is a permissible use of lobbying information. Thus, we will not disturb the Magistrate Judge's ruling on the Noerr-Pennington doctrine.

4

Defendants also argue that their lobbying information is protected by the joint defense and attorney-client privileges. The Magistrate Judge did not rule on this issue because she assumed the parties had resolved it. In the court's words:

> At oral argument, defense counsel clarified that she does not maintain that all documents concerning Defendants' lobbying efforts are privileged. ... At the time of oral argument, Stalling's counsel had not had an opportunity to analyze Defendants' privilege log. Stalling was given until February 13, 2003 to provide the Court with a pleading describing any remaining disputed privilege issue. Because Stalling did not file any such pleading, the Court assumes all privilege issues have been resolved between the parties.

(Order at 11 n.2.)

Even if there are outstanding privilege disputes, as defendants seem to contend, they have made it impossible for us to decide them. Defendants, who have admitted that only some of their lobbying documents are privileged, have not submitted a privilege log or made any attempt to describe which documents are subject to which privilege. Without that information, we have no basis for setting aside the Magistrate Judge's Order. Defendants' objections to Magistrate Judge Nolan's Order requiring them to comply with requests to admit 13, 14 and 17 and interrogatory 20 directed to Amtrak and request to admit 15 directed to UP are overruled.

Defendants also say that Magistrate Judge Nolan erred when she ordered them to produce documents responsive to production requests 16, 17, 27, 28, 32 and 33 directed to Amtrak and production request 5 directed to UP. These requests seek documents concerning accidents that have occurred at grade crossings other than the Livingston Road crossing. Magistrate Judge Nolan believed that such documents may tend to show that defendants had notice of a dangerous condition at the Livingston Road crossing and that they willfully failed to correct it. (Id. at 13-14.) Defendants do not quarrel with the notion that similar accidents at other crossings would be relevant to those

5

issues. But they say that the category of "similar" accidents is incredibly small: those that occurred at grade crossings without lights and gates and under exactly the same conditions as the accident at issue here. Because the likely benefit of the discovery is so small, defendants say they should not be required to comply with it.

The Court agrees, in part. Certainly, accidents that occurred at crossings with lights and gates would be irrelevant to the notice and willfulness issues. But defendants, who have unique knowledge of the characteristics of the crossings, have not identified those with lights or gates, or any others that are, for whatever reason, completely dissimilar to the Livingston Road crossing. Absent such information, we cannot say that the Magistrate Judge erred in ordering defendants to provide information about accidents at other crossings.

## Motion for Leave to File Second Amended Complaint

Magistrate Judge Nolan recommended that plaintiff be allowed to file a second amended complaint, a recommendation to which both defendants object. Plaintiff seeks to amend his complaint to "refine" the allegations of negligence against Amtrak and to add a state-law claim for willful and wanton conduct against UP. UP contends that plaintiff's motion should be denied because the proposed wilful and wanton claim is preempted by state and federal law and, in any event, adds nothing of substance to the litigation.

UP did not raise its state preemption argument before the Magistrate Judge. Absent a compelling explanation for that omission, which UP has not provided, the Court will not consider the argument now. See Modern Med. Labs, Inc. v. Smith-Kline Beecham Clinical Labs., Inc., No. 92 C 5302, 1994 WL 449281, at *1 (N.D. Ill. Aug. 17, 1994) ("Absent compelling circumstances,

the [Report & Recommendation] review procedure is not an opportunity to present new arguments not raised before the magistrate judge.").

UP fares no better with its federal preemption argument. UP says that plaintiff asserts not one, but two, wilful and wanton claims. The first is based on its alleged failure to have adequate warning devices at the Livingston Road crossing. The second is based on its alleged failure to evaluate independently the adequacy of the warning devices at that crossing. UP says its preemption argument is limited to the latter claim, a point that the Magistrate Judge "misunderstood." (See Defs.' Objections at 12 n.8.)

A review of the R&R reveals no such misunderstanding. The Magistrate Judge both described and analyzed plaintiff's proposed claim as a claim for failing to evaluate the adequacy of the warning devices at the Livingston Road crossing. (See R&R at 5-8.) To the extent Magistrate Judge Nolan's analysis was flawed, it is not because it proceeded from a faulty premise.

Even if the premise was correct, UP contends that the conclusion was not. In its view, the proposed failure evaluate claim is clearly preempted by the regulations promulgated under the Federal Railroad Safety Act of 1970 ("FRSA") and the Highway Safety Act ("HSA") of 1973. The Court disagrees.

The FRSA was enacted "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C § 20101. The HSA, which makes federal funds available to states to improve grade crossings, requires recipient states "[to] conduct . . . a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose." 23 U.S.C § 130(d). The FRSA contains an express preemption provision, which states:

7

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.

49 U.S.C. § 20106. The FRSA's preemptive effect, the Supreme Court has said, extends to regulations promulgated under the authority of the HSA as well. CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 663 n.4 (1993).

The Secretary of Transportation ("Secretary") has issued a variety of regulations concerning grade crossings pursuant to these statutes. One set of regulations requires each state to "develop and implement . . . a highway safety improvement program" to reduce the number and severity of accidents on all highways. 23 C.F.R. § 924.5. The planning component of that program requires states, among other things, to devise processes for "conducting engineering studies of hazardous locations." 23 C.F.R. § 924.9(a)(3). Further grade crossing regulations are found in the Manual on Uniform Traffic Control Devices ("MUTCD"). According to the MUTCD, authority for "determin[ing] the need [for] and selection of [safety] devices at . . . highway-rail grade crossing[s]" is vested in the "highway agency or authority with jurisdiction and the regulatory agency with statutory authority." FEDERAL HIGHWAY ADMINISTRATION, U.S. DEP'T OF TRANSP., MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES § 8A.01 (2000). The Secretary has also issued a third set of grade crossing regulations that apply to "[f]ederal-aid projects involving railroad facilities." 23 C.F.R. § 646.200(a). According to those regulations, warning devices installed at any grade crossing with the use of federal funds must include "automatic gates with flashing light signals" if any of a number conditions exist at the crossing, including: "High Speed train operation combined with

limited sight distance at either single or multiple track crossings"; or "a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions." 23 C.F.R § 646.214(b)(3)(i). For crossings at which the specified conditions do not exist, "the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of [the Federal Highway Administrator]." 23 C.F.R. § 646.214(b)(4). UP contends that these regulations "cover[] the subject matter" of plaintiff's wilful and wanton failure to evaluate claim. Thus, it says, the claim is preempted.

Once again, the Court disagrees. The Supreme Court's decision in Easterwood, though not directly on point, is highly instructive. The plaintiff in Easterwood was the widow of a man who was killed when his truck collided with a CSX train. She filed a wrongful death action against CSX alleging that it was negligent for failing to have adequate warnings devices at the crossing and for operating the train at an excessive speed. CSX maintained that the regulations discussed above covered, and therefore preempted, the state tort claims.

The Supreme Court disagreed. In its view, the regulations at 23 C.F.R. § 924 were too general to support a finding of preemption. 507 U.S. at 668. Those regulations, the Court said, were merely an "effort to encourage the States to rationalize their decisionmaking [about highway safety improvements]," and had "little to say about the subject matter of negligence law." Id. at 667. Given the language of the FRSA's preemption clause, the presumption against preemption and the fact that "the regulations provide no affirmative indication of their effect on negligence law," the

Court concluded that those regulations did not preempt Easterwood's warning device claim. Id. at 668.

The Court reached a similar conclusion with respect to the regulations contained in the MUTCD. It found this preemption argument "implausib[le]" given that the MUTCD's primary purpose is "[to describe] for the benefit of state employees the proper size, color, and shape of traffic signs and signals." Id. at 669. Because the MUTCD did not establish "an alternative scheme of duties incompatible with existing [state] negligence law," the Court held that it did not preempt the warning device claim. Id. at 670.

The result was different, however, for the regulations at 23 C.F.R. § 646. Those regulations, the Court said "do establish requirements as to the installation of particular warning devices." Id. Thus, the Court concluded, if federal funds are used to install warning devices, the regulations at 23 C.F.R. § 646 preempt state tort law that imposes a duty on a railroad to provide warning devices that are different from those mandated by the regulations. Id. at 671.

Though Easterwood did not involve a failure to evaluate claim, the Court's reasoning is equally applicable here. The regulations at 23 C.F.R. § 924 remain general directives about state highway improvement programs that say nothing about preemption, regardless of the nature of the negligence claim asserted. Similarly, the MUTCD remains a traffic sign manual that is silent on the subject of preemption, even in the context of a failure to evaluate claim. Id. at 670. Because these regulations have no more preemptive intent when viewed through the prism of a failure to evaluate claim than they do in the context of an inadequate warning device claim, Easterwood compels us to conclude that they do not preempt plaintiff's proposed claim.

The Court's reasoning with respect to the regulations at 23 C.F.R. § 646 is even more compelling. The Court did not confine its discussion of those regulations to the context of inadequate warning device claims. Rather, the it said that the regulations preempt any "state law . . . [that] seeks to impose an independent duty on a railroad *to identify* and/or repair dangerous crossings." 507 U.S. at 671 (emphasis added). That statement leaves little doubt that the regulations at 23 C.F.R. § 646 preempt state-law failure to evaluate claims on federally-funded installations.

The question, then, is whether federal funds were used to install the warning devices at the Livingston Road crossing. The answer, apparently, is no. At least, UP did not argue, either before this Court or before the Magistrate Judge, that federal funds participated in the Livingston Road installation. (See R&R at 6.) Absent federal involvement, which UP has not shown, the regulations at 23 C.F.R. § 646 do not preempt plaintiff's proposed failure to evaluate claim.

Finally, UP contends that plaintiff's motion should be denied because a wilful and wanton claim would serve no useful purpose.[2] As UP correctly points out, a wilful and wanton claim cannot be a vehicle for punitive damages because such damages are not available in a wrongful death case. Wills v. DeKalb Area Retirement Ctr., 520 N.E.2d 1066, 1071 (Ill. App. Ct. 1988). Nor will the claim bar a contributory negligence defense because Illinois law permits that defense to be raised when, as here, the wilful and wanton claim is premised on reckless conduct. Poole v. City of Rolling Meadows, 656 N.E.2d 768, 771 (Ill. 1995). Illinois law does, however, allow a jury to consider evidence of wilful and wanton conduct in assessing pecuniary damages for wrongful death. Mattyasovsky v. West Towns Bus Co., 313 N.E.2d 496, 503 (Ill. App. Ct. 1974), aff'd, 330 N.E.2d

---

[2]UP says that plaintiff seeks to add this claim solely to inflame the jury. Absent proof of that motive, however, UP's speculation is not a proper basis for denying plaintiff's motion.

11

509 (1975). Because Illinois law deems wilful and wanton conduct evidence relevant to wrongful death claims, plaintiff's proposed claim will serve a legitimate purpose in this litigation.

Though the proposed claim is viable, plaintiff's motion should still be denied if it is untimely or unduly prejudicial to UP. Bethany Pharmacal Co., Inc. v. QVC, Inc., 241 F.3d 854, 860-61 (7th Cir. 2001) ("Although leave to amend a complaint should be freely granted when justice so requires, see Fed. R. Civ. P. 15(a), the district court need not allow an amendment when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile."). The proposed amendment, plaintiff's third, does come somewhat late in the game. But, as the Magistrate Judge pointed out, discovery in the case is still ongoing and a date for filing dispositive motions has yet to be set. Under the circumstances, plaintiff's delay in seeking the amendment is not a sufficient reason to deny the motion.

That delay would become more significant, however, if it were coupled with a showing of prejudice to UP. But UP has made no such showing. Though UP will likely have to incur additional expense in connection with the discovery on this claim, there is no indication that the financial burden will be so great as to be unduly prejudicial.

In short, UP has offered no legal or factual basis for denying plaintiff's motion. Thus, the Court adopts Magistrate Judge Nolan's recommendation that plaintiff be permitted to amend his complaint to add a wilful and wanton misconduct claim against UP.

Plaintiff's proposed amendment also adds some new allegations against Amtrak concerning its failure to provide adequate warning devices at the Livingston crossing. Amtrak contends that it has no duty to provide warning devices on property it does not own. But Amtrak has not cited, and we could not find, any Illinois law to support that proposition.

12

Moreover, the rules of the Illinois Commerce Commission ("ICC") suggest that the opposite is true. Those rules require rail carriers to "maintain, operate and renew all signs (except advance warning signs, clearance signs, stops signs, and hazard markers), as well as signals and other warning devices of any kind installed at crossings on its line of railroad." ICC Rules, tit. 92, ch. III, subch. c, § 1535.208. The rules define rail carrier as "any person engaged in the transportation of property or passengers for hire by railroad, together with all employees or agents of such person or entity, and *all property used*, controlled, or owned by such person or entity" and railroad as "track and associated structures . . . and equipment . . . *used* in the transportation of property or passengers by rail. Id. § 1535.100; 625 ILL. COMP. STAT. 5/18c-1104(30)-(31) (emphasis added). Thus, the ICC rules make rail carriers like Amtrak responsible for the warning devices at the crossings they use, whether or not the carrier owns them. It is unlikely that the ICC would have issued such a rule if Illinois common law vested such responsibility solely in the owner of the property.

In any event, Amtrak's unsupported assertion that it has no responsibility for warning devices on property it does not own is not a sufficient basis for denying plaintiff's motion. Accordingly, the Court adopts Magistrate Judge Nolan's recommendation that plaintiff be allowed to amend his complaint to add new negligence allegations against Amtrak.

## Conclusion

For the reasons set forth above, all of the parties' objections to Magistrate Judge Nolan's June 5, 2003 discovery Order are overruled. The Court also adopts in its entirety the Magistrate Judge's recommendation that plaintiff be permitted to amend his complaint to assert a wilful and wanton claim against UP and add negligence allegations against Amtrak. Plaintiff has fourteen days from the date of this Order to amend his complaint. Defendants have fourteen days from the date of this Order to comply with their discovery obligations as set forth above.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: 7-16-03