Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| CASE NUMBER | 01 C 1056 | DATE | 1/22/2004 |
| CASE TITLE | Gregory Stalling vs. Union Pacific Railroad Co, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, Union Pacific's motion for protective order as to the deposition of Gayla Fletcher [93-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 23 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | 96 |
| | Mail AO 450 form. | | | |
| ✓ | Copy to judge/magistrate judge. | | 1/21/2004 | |
| | | | date mailed notice | |
| | hmb courtroom deputy's initials | | hmb | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

GREGORY STALLING, Special )
Administrator of the Estates of )
BECKY STALLING AND RYAN )
STALLING )
 )
    Plaintiff, )
 )
v. )   No. 01 C 1056
 )   Magistrate Judge Nan R. Nolan
UNION PACIFIC RAILROAD )
COMPANY, a Corporation, and )
NATIONAL RAILROAD PASSENGER )
CORPORATION d/b/a AMTRAK )
 )
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Defendant Union Pacific Railroad Company ("UP") moves for the entry of a protective order quashing the notice of deposition of Gayla Fletcher, the UP's Vice President of Claims and Risk Management. For the reasons set forth below, the Court grants the motion.

## BACKGROUND

This case arises out of a train-auto collision in Dwight, Illinois on January 14, 2001 which resulted in the death of Plaintiff Gregory Stalling's ("Stalling") wife and daughter. Stalling alleges that UP was negligent and willful and wanton in failing to provide adequate warning devices at the Livingston Road crossing where the collision occurred. Stalling now seeks to depose a member of the UP's Law Department, the UP's Vice President of Claims and Risk Management, Gayla Fletcher ("Fletcher"). UP opposes the taking of Fletcher's deposition on grounds of irrelevance and privilege.

Fletcher is in-house counsel for UP and not counsel of record in this case. As UP's Vice President of Claims and Risk Management, Fletcher oversees the various claims departments around

the country and the claims personnel within those departments. While she oversees those persons within the UP law and claims departments that investigate grade crossing accidents, Fletcher does not travel to the location of the accidents and does not perform any personal investigation into the facts of the accidents or causes. With respect to the accident at issue in this case, Fletcher has no personal knowledge regarding the facts of the accident, other than information she may have learned through claims representatives or lawyers within the UP or through outside counsel. Fletcher also has no personal knowledge regarding the installation of warning signs at the crossing at issue here before or after this accident.

## DISCUSSION

The federal rules permit "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "The Federal Rules of Civil Procedure do not create a blanket immunity that exempts attorneys from ever being deposed." Prevue Pet Products, Inc. v. Avian Adventures, Inc., 200 F.R.D. 413, 418 (N.D. Ill. 2001); see also Fed. R. Civ. P. 30(a)(1) (stating "A party may take the deposition of any person, including a party, by deposition upon oral examination. . . ."). Rule 26(c) provides, however, that a court may make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that the disclosure or discovery not be had." A court can also limit discovery if it determines that the discovery is unreasonably cumulative or duplicative or obtainable from another source that is more convenient, less burdensome, or less expensive. Fed.R.Civ.P. 26(b)(2); see also Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002) (stating trial courts "have broad discretion in matters relating

to discovery.").

In support of its motion, UP cites the rule of Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1987). The Shelton court held that depositions of opposing counsel "should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel, . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Id. at 1327. With respect to the first Shelton factor,

> If there are other available sources, the party seeking discovery should explore them first. If there are other persons available who have the information, they should be deposed first. Also, other methods, such as written interrogatories, requests for production, or requests for admission, which do not involve the same dangers as an oral deposition of opposing counsel, should be employed.

Kelling .v Bridgestone/Firestone, Inc., 153 F.R.D. 170, 171 (D. Kan. 1994). A trial court has the discretion under Rule 26(c) "to issue a protective order against the deposition of opposing counsel when any one or more of the three Shelton criteria for deposition listed above are not met." Boughton v. Cotter Corp., 65 F.3d 823, 830 (10th Cir. 1995). Numerous federal courts in this district have followed the Shelton approach, and this Court will consider the Shelton factors in determining whether to bar Fletcher's deposition. Prevue Pet Products, 2000 F.R.D. at 413 (N.D. Ill.2001); Hernandez v. Longini, 1997 WL 754041 (N.D. Ill. Nov. 13, 1997); M & R Amusements Corp. v. Blair, 142 F.R.D. 304 (N.D. Ill. 1992); Harriston v. Chicago Tribune Co., 134 F.R.D. 232 (N.D. Ill. 1990); Joslyn Corp. v. RTE Corp., 1988 WL 102104 (N.D. Ill. Sept. 18, 1988). The deposition of an attorney is "a highly unusual occurrence," Anderson v. Hale, 198 F.R.D. 493, 495 (N.D. Ill. Dec. 20, 2000) (Moran, J.), and Stalling has not shown that he is entitled to depose UP's in-house counsel.

Without citation to any authority, Stalling opposes UP's motion to quash the notice of deposition of Fletcher. Stalling's submission gave three areas of inquiry for which Fletcher's deposition is sought: 1) to further explore "UP's knowledge of, ignorance regarding, and stubborn refusal to recognize its duty of care to provide safe railroad crossings;" 2) to explore and prove Stalling's theory that "UP has made a financial decision to ignore the adequacy of crossing protection devices at its crossings and simply pay claimants injured or killed in highway-crossing collisions;" and 3) to investigate inconsistencies between UP's Claims Operations Manual and UP's Grade Crossing Resource Manual. Pl's Resp., pp. 3-4. Stalling has failed to demonstrate that this information cannot be obtained from other sources.

Turning to the first <u>Shelton</u> factor, Stalling states only that "the information sought by Plaintiff in this case cannot be obtained by any other person [or] source in light of Gayla Fletcher's position as VP of Claims at UP . . . Acting in her representative capacity on behalf of UP, she has intimate knowledge of UP's claims department policies with regard to grade crossing protection and knowledge and recognition of common law duties of care." Pl's Resp., pp. 7-8. Stalling's argument that no other means exists to obtain the information he seeks is unconvincing.

Stalling's Response admits that Fletcher is not the exclusive source of information for the first area of inquiry sought by Stalling. Stalling states that the deposition testimony of Clifford Shoemaker in other similar grade crossing cases and the UP Claims Manual "evidence UP's knowledge of, ignorance regarding, and stubborn refusal to recognize its duty of care to provide safe railroad crossings." Pl's Resp., p. 3. Stalling concedes that he seeks Fletcher's testimony merely to "explore further" these issues. The information Stalling seeks is available in materials already produced, i.e. Shoemaker's deposition testimony and the UP Claims Manual.

Stalling also argues that he is entitled to depose Fletcher to explore and prove his theory that UP has made a financial decision to ignore the adequacy of crossing protection devices. Stalling again concedes that a deposition of Fletcher is not the only means to obtain the information he seeks. Stalling states that financial documents produced by Fletcher in previous depositions in other cases provide annual settlement amounts paid by UP for grade crossing collision cases. Stalling believes these financial documents support his theory that UP made a financial decision to ignore grade crossing safety. Stalling does not state what, if any, additional information he needs from Fletcher to prove his cost-benefit theory and whether there are other available sources for any such additional information. Stalling has not even attempted to show that Fletcher is the exclusive source of this type of financial information, and it is reasonable to assume that further information regarding settlement amounts paid by UP can be obtained from individuals other than Fletcher.

Stalling further states that he seeks to depose Fletcher regarding inconsistencies between the UP Grade Crossing Resource Manual (in which UP allegedly denies a "duty to provide safe crossings claiming this duty rests entirely with local municipalities and state agencies") and the UP Claims Operations Manual (in which UP allegedly "recognizes that it may have a duty to upgrade crossing protection devices at crossings it owns to make safe for motorists"). Pl.'s Resp., p. 4. Stalling has not shown that information concerning this alleged inconsistency could not be obtained from other sources.

Stalling has completely failed to demonstrate that no other means exist to obtain the information he seeks than to depose Fletcher. Because Stalling has failed to satisfy the first Shelton factor, the Court need not address the remaining two factors. Epling v. UCB Films, Inc., 204 F.R.D. 691, 695 (D. Kan. 2001).

Finally, Stalling makes much of the fact that Fletcher has been deposed in two other grade crossing collision cases. Stalling has attached to his Response a 279 page deposition of Fletcher taken in a case pending in the District Court of Harris County, Texas. The fact that Fletcher has been deposed in two other cases does not aid Stalling's attempt to depose Fletcher here because Stalling does not provide any specific information about the claims and defenses in those other cases, whether the information provided in those depositions was available from other sources, and whether UP opposed Fletcher's deposition in those matters. Stalling cites extensively from Fletcher's deposition testimony in the Texas case to show that Fletcher has relevant and nonprivileged information regarding UP's duty to provide safe crossings. Pl's Resp. pp. 5-7. Stalling's heavy reliance on Fletcher's prior testimony undermines his claim that a further deposition of Fletcher is crucial to the preparation of his case here. Stalling already has substantial testimony from Fletcher which he believes is relevant, and Stalling has made no attempt to show that an additional deposition of Fletcher would not be duplicative of testimony already available to Stalling.

## CONCLUSION

For the reasons explained above, the Motion of Union Pacific for Protective Order As to the Deposition of Gayla Fletcher is granted.

ENTER:

Nan R. Nolan
United States Magistrate Judge

Dated: 1-22-04